The next matter, number 23-1697 and number 23-1703, Eric Moore v. Industrial Demolition LLC. At this time, would counsel for Industrial Demolition please introduce himself on the record to begin. May it please the Court and good morning, Your Honors. Tom Metzger on behalf of Industrial Demolition and with the Court's permission, I'd like to reserve three minutes for rebuttal. Yes, you may. Thank you. Mr. Moore, in this case, did not have a disability as a matter of law. Therefore, the failure to accommodate claim fails because such a claim requires an actual disability. And second, Mr. Moore did not engage in protected activity as defined in the law. And therefore, the retaliation claim fails as well. On the first issue. Let me ask you something. I don't know if it's unique to Massachusetts or if it's common, but this statute that talks about any employee who sustains a work-related injury, et cetera. Yes, Your Honor. And so why isn't that issue within Massachusetts as to whether that means the person automatically qualifies as a person with a disability? Those courts, including the most recent decision, have said no, that's not the correct interpretation. The correct interpretation is that a person is otherwise going to be treated the same, even though they had a workplace injury. And then the analysis would still be the same under the law. It's not as if then, Your Honor, to use an example of a paper cut, that they're then automatically deemed to be disabled just because the paper cut occurred at work. Instead, the analysis is we still look at the individual and the substantial limitation on their ability to perform major life functions before we get to the answer as to whether they're disabled. There's another factor here, Your Honor, as well. We do not have a person injured at work. There was no report of a workplace injury during that time. He had not required any time off during this alleged day where he said that he sustained the injury. There was no worker's compensation claim filed during the time that he was still employed. So both from a legal standpoint and factually, that particular provision does not apply. Even this court has indicated that the interpretation of that particular provision is rather ambiguous. But we don't need to get to that point here, because the bottom line is simply he did not have a disability as a matter of law, given the very short-term duration of this hip injury, which lasted by all accounts, and it's undisputed, just one week. And he also got litigation. Mr. President, would you have to say a one-week, and I'll put in quotation marks, disability would not qualify under a statute? Yes. I believe there's no SJC, Massachusetts SJC opinion as to that, correct? There are numerous decisions that we cite to under Massachusetts law, the ADA, and the ADA as amended. Now, here our contention, first, Your Honor, is that only there was a amendment to that provision as there was through the Amendment Act of 2008. However, within decisions, including under First Massachusetts law, there's the Frayer v. First National case that's cited throughout our brief, Haugran v. Integrative Financial Court, Cordes v. Legal Secute. All of those decisions first under the ADA, the alleged injury does not rise to the level of a disability. The cases under the ADA, again, not applicable here, but still helpful, because those cases, even under cases post-2008, Your Honor, including the Dorsey decision, which we cited, and that's a 2022 case, and I'll quote from that. Well, to summarize from that, it says any limitations on the plaintiff's ability to walk were the result of temporary injuries, and it was a knee sprain and ankle fracture, and therefore, in that case, the court found, District Court 2022, under the amendment, that the temporary restriction was not a disability. And so the cases are consistent under Massachusetts law and federal law that for such a short duration, this would not constitute a disability. But my question is, there's no SJC case on point, right? There are cases from lower courts. There are cases from lower courts, that's correct. There's also other District Court cases on the precise issue as well, Your Honor, that's correct. But there's also no case that the cross appellee has cited in which such a short duration constituted a disability. There's no case, whether from a lower court or from a court of appeals, finding that a hip injury of one week, in which not only he did recover in the one week, but the expectation was that he would make that finding, because there is simply no authority for it, and under Massachusetts law, looking at not only their precedent, but also the guidance, which is persuasive under the Massachusetts Commission Against Discrimination, they still interpret the requirement as requiring a duration that is expected to be permanent or long-term, and not short-term. Their guidelines, which are official, in which the courts are to give substantial deference to, does find and does specifically state that the permanent or long-term impact of the alleged impairment has to be considered. And we don't have that here whatsoever. It's undisputed that we're dealing with a one-week issue. So in your view, this is not really an issue that we should even consider certifying to the SJC? I believe, Your Honor, it should be reversed, directly. Because we, first on the facts, there's no dispute. One week. Done. We don't have some other question as to what perhaps may have been a long-term issue. I think here, directly, it should be reversed. But what was the jury instruction about how do you define disability? And was there an objection? Yes, Your Honor. There were two issues with the jury instruction. And relatedly, was it disabled or regarded as disabled? Well, there was no claim here of being regarded as disabled. The complaint did not raise a claim of regarded as disabled. We never got to the question of regarded as disabled at trial. That was simply never raised. The first time that the issue of regarded as disabled was raised was before this court. And that's not, then, appropriate before this court. We can briefly touch upon, then, your direct question, Your Honor, about the jury instruction. Two critical pieces there. First, the original instruction that was read to the jury included the language of permanent or long-term impact. That was just read to the jury. There, then, at 1 p.m. of deliberations, a question came in from the jury asking, Your Honor, exactly your question. What's the definition of a handicap? And that's where we've raised the other issue of if this decision is not going to be reversed in its entirety, at a minimum, the case should be remanded because of the improper answering of that question and the manner in which we were informed as to what the answer was. But was the answer improper, or are you just complaining about the manner in which it was done? It is both. Well, how was it improper? Because I thought he just read back the prior definition. No, Your Honor. What was left out was all of the issues relating to what substantial and limited means. So the jury had asked, What's a handicap mean? Only the first part of the definition was given. When the original instruction was read to the jury before they deliberated, the full definition was given. It was an explanation consistent with our request of jury instructions, which went to the issue. So had you been present, you would have asked for the whole instruction to be given. Absolutely. Did we even get to any of this? Because the jury found your defendant guilty of retaliating against the plaintiff. And as I looked at the jury instruction, the judge told the jury that the defendant retaliated if the defendant terminated plaintiff for engaging in protected activity. And then the judge instructed protective activity here means requesting and utilizing a reasonable accommodation. And there was no objection to those instructions. Well, our objection, Your Honor, is that we have a legally insufficient basis. No, there was no objection to the instruction. Well, our objection, Your Honor. Well, are you saying there was an objection? Our objection, yes, Your Honor. Our objection was to the fact of it was not handicapped in the first place, and there was no reasonable basis for there to be any instruction that it was handicapped. Timeout. Timeout. The judge gives an instruction. If you don't like it, you have to object then at the conclusion of the instructions. Did you object to the retaliation instruction? I believe we did, Your Honor. I believe we objected to the instruction in terms of what was given to the jury in terms of the definition of handicap and also in terms of the issue relating to the protected activity. The handicap was no mention in what I just read. Your Honor, in terms of the legally insufficient basis for the jury to conclude that there was any protected activity, that was also the basis for objection to the court to say there was no basis as a matter of law for us to get to the definition of protected activity. Well, let me ask this. If the retaliation verdict stands, then we don't even need to get to any of the other issues, do we? Well, Your Honor, the retaliation, to answer your question directly. I'm not asking whether you agree it should stand. I'm asking you if you agree that if it does stand, then that moots this whole discussion about whether your client was guilty of handicapped discrimination or failure to accommodate. Those were two separate findings. That's correct, Your Honor. Those were two separate findings. But here, there was no objectively reasonable good faith basis for Mr. Moore in the first place to claim that there was a basis for that accommodation. He never engaged in protected activity in the first place. Well, requesting an accommodation is protected activity if he had a handicap. Not in all cases. Not in all cases, Your Honor. So there may be, it would have to be, and consistent with the cases we've cited, including the Isley v. Acre, Philadelphia shipyard case, there would have to be a reasonable objective basis for the individual to determine that they had a disability requiring then an accommodation. And the cases that we cite to consistently demonstrate that it's not just a question of there being an accommodation or even honoring the accommodation. The cases that we cite to, including the standard matter, Selima and Isley, which I referenced, all get to the very point, the standard case being 11th Circuit, Selima being a 3rd Circuit case, all getting to the critical point that in those situations, it was not even a basis for the individual to claim that he had engaged in protected activity, even though in the standard case and the Selima case. I didn't see that argument in your 50B motion. The 50B motion included, Your Honor, the fact that we addressed the retaliation claim and the handicap claim. We demonstrated within that motion as well what we were saying was that there was no basis whatsoever for us to be there and as a matter of law, this short-term, one-week condition never rose to the level of a disability, nor could it reasonably be considered a disability. Thank you. Thank you, counsel. At this time, if counsel for the appellee, Moore, could please introduce himself on the record. Good afternoon, Your Honors. Jamie Goodwin. I'd also like to reserve three minutes of time to provide an additional argument. Well, you're asking for what, three minutes? You have reserved three minutes, sorry. On what? My brother, if he responds for three minutes. Do you want to reserve some time limited to your cross-appeal? Your Honor, I'll just go with my 15 minutes. In the Commonwealth of Massachusetts, if an individual gets injured at work and requests a modification of duty, that is protected activity, as long as it's in a good faith, and under 151B, as specifically incorporated through 152.75B, Sections 1 and 2, it is per se, gives you handicapped status. Now, Mr. Moore was in a clean, creating a clean room, a don and doffing space, on a Saturday shift, he injured his hip, got worse to the weekend, Monday morning goes to the emergency room, provides a note. Because your brother just said that's not what that statute does. When you say per se, do you mean it's sufficient that if you're injured while you're at work? You are protected under 151B. Are you protected because you have a handicap? Or do you have to independently show that you have a handicap? Independently show that he's handicapped under 151B. Even though it's for one week, he's handicapped for that week. Yes, Your Honor. So both parties submitted jury instructions. We submitted a jury instruction referencing Gothier v. Sun Systems. They submitted another jury instruction, and the jury instruction that the court ended up reading was basically a recitation of 151B. But basically, if you're a major life activity... Was there an objection to that? Neither were... Was there an objection to the instruction? Yes. Yes, I objected to the instruction on the record. On 151B. Yes, that did not address temporary handicap under the statute, but the court proceeded regardless. But moving to the point of... Back to 75B, I've had... Two weeks ago, I think, I had a Superior Court judge conclude that yes, what I'm saying is, at least on a motion-to-dismiss level, accurate. I've also had the same argument made in Billson. Do you want to keep your argument based on the record? Or if there's some precedent, you should give us a citation or file a 28J letter. Certainly, Your Honor. Not oral reports of what happened last week. Well, the practical reality of what happens in the world of industrial injury is relevant to this court. And the notion that somehow that an individual can suffer an industrial accident, then get a note, have the employer give them an accommodation, adjusting their work based upon that note, and then be found to not be a qualified handicapped individual is absurd. And it's absurd based upon the plain language of the statute the cases has interpreted in our brief. And also moving back to 151B, because it impacts a substantial life activity, meaning the ability to work. So he had to work with an accommodation. Read the statute. That is what... When you talk about, like, case law, as I asked the opposing counsel, there's no case law from the SJC, correct? Correct, because it doesn't get to that level. Because it's on the face of the statute. It's plain when you practice in this area. What about the lower court decisions of record? Well, the ones that I was just referencing or the ones that... Not ones that you had a conversation with in some court that there isn't something we can go look at, but a decision that a court can cite to. Well, Gothia v. Sun Systems is one, which is stated in the jury instruction as addressing temporary handicap. And then beyond that, all of the cases... So Gothia says it can be of short duration? Gothia says that temporary handicaps are handicaps under 151B. It addressed carpal tunnel syndrome attendant to a pregnancy. So temporary carpal tunnel syndrome that was considered a qualified handicap status. But does it say any workplace injury shall be treated as a handicap? That's the statute, Your Honor. But that's not that case. That case is not an industrial accident, no. But the statute specifically states that an individual that suffers a qualified handicap... I understand what the statute said, but I understand your opposing counsel to be saying that there's case law saying we shouldn't read it literally. He's incorrect. And the cases that are cited in their brief do not represent that. For example, I believe one of them involved an injury from 15 years prior. One of them involved a blind woman who had a disability who got fired for performance against the Department of Mental Health. But the blunt reality is Mr. Moore was a qualified handicap person. But beyond that particular point, the retaliation, again, we don't really even need to get to that juncture because retaliation is a good faith belief and a request for accommodation is protected activity. You don't even have to... The argument being that you used the phrase in good faith belief, the other side used the argument objectively reasonable belief. Which is it? It's good faith. So moving to... And how was the jury instructed? The jury was instructed... So was it told that it had to be a good faith belief? I believe the jury was instructed in good faith belief, Your Honor, but I don't have my record on that handy. So the... But moving to the issue of punitive damages, if I may. The... All right. Before you get to punitive damages... Sure. Could you deal with this jury question briefly, please? Okay, about the... Notes. Yeah, so at 1115, I believe the jury went to, left the room. At 1 o'clock, there was a question apparently that came back from the jury. The clerk came back to the room. Myself and my brother counsel for the plaintiff were there. The defense counsel were not there. The judge, she showed us what the question was. Did the judge show you or the clerk showed you? And so then the clerk said she wasn't waiting for the other side. We, at that point in time, spoke again to preserve our objections in the record. Then Attorney Metzger and his co-counsel and client returned. At that point... Was the judge present in the courtroom? Then the judge came into the room. So at that point... Originally, you're there with co-counsel. You get the jury note or the question from the courtroom deputy, I assume. Correct. And then the opposing counsel comes in, and then the judge comes in at some point. Correct. And so that's when the argument occurred. To my knowledge, nothing went to the jury prior to the arguments being made to the judge. The parties made the arguments about what they believed the instructions should be, and then the judge answered the question. So the arguments were made before the judge. I mean, that's how I read the transcript, before the judge, on the record, before she sent an answer to the... That is my understanding, to the extent I know it, Your Honor. But so there's no harm. It was a little erratic, as, frankly, much of the trial was a little chaotic. But again, going back to the issue on punitive damages, okay, this is an abuse of the discretion standard. Effectively, there was uncontroverted facts that Mr. Moore had an accommodation. That accommodation on the Friday of the 13th was ignored. He was supposed to be working in the trucks. The supervisor, Robert Overkramer, said things, and excuse my language, you've been jerking off in the truck all week. Other similar expletives. There was a certain back and forth that went on with my client saying, I can't get out of the truck and lift rocks. I can't. I have a restriction. I need to stay in the equipment. And eventually, culminating, Mr. Overkramer, using the expression, hit the gate, meaning he's fired, he's off property. Mr. Overkramer, the record demonstrates, had a long history of racist, erratic, dangerous behavior, including police reports on the job. This all occurred in December of 2019. He remained working there until we served discovery in the case. And then all of a sudden, Mr. Overkramer was no longer present at the employer and had decided to move on at that juncture. How does that, what you're saying, warrant the punitive damages instruction, per se? Well, because what you're going to see is that because there's an intentional or outrageous standard, right? And employer purposes of punitive damages is to stop employers from engaging in abusive behavior to not engage in retaliation. And if an employer, so if you're, you know, Jeff Bezos is the head of Amazon, well, he doesn't know that retaliation is necessarily occurring. But if you go up the chain of command and people find out about it, what the company knew and what the company did to remediate it are essential to making sure that they do not in the future discriminate or retaliate against individuals who have suffered injuries or have handicaps. And there was no contrition and no accepting of their failures. And much the opposite, Becky Lydon, in fact, lied in her testimony, stating that she thought this gentleman, Overkramer, was a good apple when, in fact, we have this. Did you make this argument to Judge Lobello when requesting the punitive damages instruction? Or if she denied, Judge, reconsider. Please, I want to lay this for the record. I attempted to, Your Honor, but there was no discussion on punitive damages on that Friday morning. We walked in the door and it was not on the slip. We erased it. We preserved it. There was no substantive conversation. She shrugged her shoulders and said, I don't really see it as this type of case. It was incredibly inappropriate and incredibly shocking. Did you submit an instruction on punitive damages? Yes, I did, Your Honor. And so there should have been punitive damages on the slip. The owner of the company. Or at least, what I'm saying, there should have been some arguments as to why. Certainly. Let's assume Judge Lobello had said, I've listened to your argument and I've listened to your proffer, and based on X, Y, and Z, this does not arise to the level that even in the light most favorable to you would get a punitive damages. In actual process, frankly, we were shocked by it, and we moved along. And again, review. After your instructions were delivered, was there a further objection? Correct, Your Honor. And we moved to have a new trial on punitive damages, and alongside that we also moved to amend the award on the collateral source issue, which I will now get to because I only have a few minutes left. So the National Labor Relations, so the Tuesday, so Mr. Moore is fired on a Friday. The Tuesday afterwards he has a conversation. Just tell us what happened with the collateral source rule. Well, this is important though, Your Honor. We got the background. Yeah, this is background. This is the point. He's fired on a Friday. On a Tuesday he talks to the owner of the entire company, Mike Roberts. We know he went to the NLRB with a wage discussion. And it's based on the conversation that he has on Tuesday because what Mr. Overkramer said to Mr. Roberts was, no, that's not what I heard, Eric. He didn't fire you because of your disability. So essentially what they offered was a legitimate non-discriminatory reason that was illegal. That legitimate non-discriminatory reason that was illegal was, we didn't like your workplace scuttlebutt. You were talking about your compensation with other employees. So as a consequence of that, the charge was filed, and the National Labor Relations Board, after we filed the charge, issued a complaint. That complaint is theirs. They are a law enforcement agency, and they are a branch of the federal government. And much like the Massachusetts Department of Industrial Accidents and the Massachusetts Department of Unemployment Assistance, that the engagement with the government in this way makes it a collateral source. Now, my brother made a clever argument saying, it's not collateral, the check came from us. But that is not instructive. Because what the purpose of the collateral source rule is, is to prevent juries from believing that they have double damages, that somehow they've been enriched twice for the same violation. The violation that occurred after the National Labor Relations Board was about the impermissible speech. And the mechanism that the board has to fine people is compensatory damages. They do not have ability for any others. So that was the reason that was settled. And so it is a separate right set. That is the analysis for collateral source. It is not where the money came from or not. And the slip has literally a minus in the amount that Mr. Moore would receive. So our request would be simply direct the court for further proceedings to give Mr. Moore the entirety of his verdict and to order a trial on punitive damages. So with that, we appreciate your time today. But did you object? Yes, I did, Your Honor. Strenuously and multiple times at all points during the process. And the court just said, I disagree? The court seemed to struggle with the issue. And I will leave it at that. Thank you. Thank you, counsel, at this time of counsel, for the appellant industrial demolition. Please reintroduce himself back on the record. He has a three-minute rebuttal. Thank you, Tom Metzger, on behalf of industrial demolition. If I may, first, I'd like to address the timeline on the jury deliberation issue and the question coming in. We laid out in our reply brief a full timeline based upon the transcript of exactly what did occur. That's on pages 26 through 28. It was not the case, Your Honor, going to your question to counsel, that the question was read out to us and the judge was present the entire time. Instead, when we came into the courtroom at 108, it was already an answer that had been given to plaintiff's counsel. We then objected to the process right away without the judge being present. A full 20 minutes then went by. The clerk was gone. The clerk came in, and this is at JA 582. She said, the clerk said, without us having the opportunity to talk with the judge, your objection is noted. She said your objection is noted to put it on the record. So then I further discussed our objections on the record, particularly going, Your Honor, to your questions about the full definition that we had originally received regarding the permanent long-term duration, addressed all of that. Another 20 minutes then went by. A full recess was taken. And then the judge entered at 150. So the question from the jury came in at 1 o'clock. We had all these proceedings. We did not see the judge until 150 p.m. And then at that point on page 27 of our reply brief, I lay out where there's repeated reference by me, plaintiff's counsel, references from the clerk that the answer had already been sent back. The quote from the clerk at JA 587 is, I sent it up to them, but here's a copy when she's talking with the judge. I don't think there's any dispute. You mean the answer? The answer was sent up, correct. There is, from the record, it's clear that the question was first read to plaintiff's counsel without us being present. When we came in, the question and answer was read. What happened when the judge got in the courtroom? Are you saying that the answer to the jury's question had already been sent to the jury when the judge entered the courtroom? I think that's quite clear from the record, yes, Your Honor. I think it's referenced time and time again where I'm referencing, for example, they've been given an incomplete answer. We're talking about what was already sent to the jury. We're talking about what the jury was already considering. I think it's very clear. So who's doing this? Is the clerk doing this or the judge doing this? The originally sole communication was with the clerk without the judge being on the bench or in their presence whatsoever. And it was a full 50 minutes that went by where finally the judge came in and I had an opportunity to talk with the judge about our concerns with what had been sent back. And that's how it was characterized over and over again, with the judge present after 50 minutes, our concern that they already had a very incomplete prejudicial answer. And the process itself was certainly prejudicial. So if I understand your concerns, your concerns were not that what the clerk read to the jury or gave to the jury was itself incorrect, but rather it was incomplete, incorrect in that sense. And you had a full opportunity to argue to the judge that she should expand upon that answer. Your Honor, I would disagree with the characterization of the first piece because under Massachusetts law in particular, that issue based upon the MCAD and all the precedent consistent with it, the definition of a handicap or the equivalent disability under federal law, it's critical for the duration element regarding the permanent long-term impact to be a part of that definition. So you're saying it's incomplete? It was certainly incomplete, but also wrong in that. Wrong other than being incomplete? I would say, Your Honor, in terms of defining it, yes, it was wrong. But it was certainly prejudicial. Was it wrong other than that it was incomplete? I think, Your Honor, yes, because the original instruction given to the jury just verbally included certain portions that were then taken out. And so it was not only incomplete, but incorrect and prejudicial, both because of the proceedings. How was it incorrect other than it was incomplete? Because then there was no definition. What words were read and how were they wrong? There was no inclusion anymore, Your Honor. The key component regarding the permanent long-term nature, defining it, the jury asked. So you're saying it was missing something? It was certainly missing something, yes. It was certainly missing. Your time is up. Any further questions? So was a written response given to the jury? Our understanding is a written response was given to the jury. Your understanding was a written response given to the jury. Is that clear from the record that it was? Well, actually, Your Honor, you raise an interesting point. Something not in the record and something I did look for in terms of actual document from the court was something that was included in the record, but the statements from the clerk and the statements from the judge were that there was something in writing that was given to the jury. But we weren't present when it was discussed with the jury. They were not holding. But do we know what it is? Because you're arguing that it was incomplete, and I'm just trying to figure out when we start scrutinizing this, where are we supposed to be looking for this information? The answer was on JA594. The statement there was handicap under the law, and it's defined there. There was a short statement there. Okay, but let me ask you. The question is when there's a jury question, the judge, at least in my experience, I as a presiding judge can bring the jury out and say, ladies and gentlemen of the jury, you've asked this question. I'm going to give you the answer. It goes on the record. Or alternative number two, I would discuss it with counsel. Let me send a note back. But that note has to be, if the jury has it, it has to be part of the record. Did you tell us there's no note that's part of the record? There's no note and part of the record. You and the opposing counsel know, you know. We don't know precisely what was read to them. We don't have a document showing what was read to them. And we know going back to. . . It could have been fatal to you and you don't know it. It could have been detrimental to you or vice versa or detrimental to both. Nobody knows anything. That's precisely right, Your Honor. That's precisely why in terms of. . . But did somebody ask for it? I'm sorry? Did somebody ask that the court produce it? Because it's usually marked and put in the record. Your Honor, part of our objection was that the answer had already been given. Procedurally, that is prejudicial to the point where the case has to be remanded at a minimum because of that procedure. But this would. . . You're saying this would be some sort of structural error that requires rehearsal. All right. Yes. There's no question based upon the U.S. Supreme Court case and its progeny that cited, including First Circuit decision, where this precise procedure took place, where we did not have the benefit of being in front of the judge with opposing counsel to get the question, to understand and object to any proposed answer, to work on what the answer was. None of that occurred. Did any of you at some point or both say, Judge, we need that to be in the record, or can you clarify for the record? Or, you know, did that happen? There was substantial discussion for both. The clerk had first asked me to read it into the record without the judge joining the bench. So I did so. I continued to object to the process, and that's when the judge came in at approximately 150, and we started to object further as to not only the process but the answer. So, yes, we. . . And what did the judge say at that point? Essentially, the judge said that the answer that was already with the jury was not going to be changed. Our objections would be noted. But, again, you still don't know what that answer was to the jury. To be fair, Your Honor, right. We don't know precisely. Something was read out loud, but we don't know, and it's clear from our timeline that we lay out in our brief, again, on 26 and 27 of our reply brief, it's clear that the communication was directly from the clerk to the jury. I don't know whether anything was revised, there was any emphasis on it. We don't know. We don't know. Judge Zobel, in theory, could say, clerk, the courtroom deputy clerk, this is what I want the jury to know, can you read it to them, versus that the jury clerk simply, we don't know from the record how it happened or. . . We don't. We don't. Does Judge Zobel utilize written jury instructions? Does she give the jury the instructions to take back with them? She did not. Your brother's over there nodding something differently, I thought. She did not do that. She did not? No. Okay. Thank you. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.